[No. 4090.]

CHENEY V. CRANDELL.

28  383
17a 152
17a 154

1. CHANGE OF VENUE—WAIVER.

Where a judge in vacation of his own motion ordered a cause
transferred to the district court of another county, and the court
to which the transfer was made had jurisdiction of the subject mat-
ter, and when the cause was called for trial the plaintiff appeared
and consented to proceed with the trial, he waived objection to the
order of the court transferring the case.

2. PRACTICE—PLEADING—EQUITABLE DEFENSE—EJECTMENT.

Under section 59 of our code an equitable defense may be in-
terposed to a legal cause of action, including what under the old
practice is denominated ejectment.

3. PRACTICE—EJECTMENT—NEW TRIAL—WAIVER.

Under our former statute granting a new trial as matter of
right to the losing party in an ejectment suit the party did not
waive his right to such new trial as matter of right by first moving
for a new trial for cause, which was denied, and giving notice of
appeal which was not perfected, where his application for new trial
as of right was made within the time and under the conditions
prescribed by statute.

4. VENDOR AND VENDEE—PURCHASING OUTSTANDING TITLE.

In an action for possession of real estate where plaintiff claimed
that defendant went into possession under contract of purchase
from plaintiff and was therefore estopped to deny plaintiff's title,
and defendant denied going into possession under such contract and
alleged that having discovered plaintiff's fraud she repudiated the
contract with plaintiff and purchased an outstanding equity of re-
demption and entered into possession thereunder, and upon conflict-
ing evidence that issue was decided in favor of defendant, the find-
ing of the jury disposed of plaintiff's contention and it was unnec-

essary to determine whether a vendee who takes possession of real estate under contract of purchase is estopped to deny the title of the vendor.

5. MORTGAGES—FORECLOSURE WITHOUT REQUEST OF HOLDER OF NOTE
   —INTEREST COUPONS.

Where a securities company transferred a note with interest coupons secured by deed of trust and upon representation of the securities company that certain of the coupons would be paid they were detached from the note by the holder and sent to the company, who failed to pay them but assuming to own the coupons and without any request or authority from the holder proceeded to foreclose the deed of trust and purchased the property in its own name, the foreclosure was voidable at the option of the holder of the note.

6. SAME—INNOCENT PURCHASER.

Where a trustee in a deed of trust who was the president of a securities company fraudulently foreclosed the deed of trust without the consent of the holder of the note and bought the property in the name of the company, and afterwards the company went into the hands of a receiver, a purchaser of the property from the receiver, who was informed by the receiver that the foreclosure sale was a fraud and that the trust deed still existed as a lien upon the property, was not an innocent purchaser, but took the property with notice of the defects in the title.

7. TRUST DEEDS—FRAUDULENT FORECLOSURE—OWNER OF EQUITY OF
   REDEMPTION MAY OBJECT TO SALE.

Where a deed of trust is fraudulently foreclosed, without the consent of the holder of the note the owner of the equity of redemption as well as the holder of the note may assail the validity of the foreclosure sale.

*Appeal from the District Court of Conejos County.*

The complaint has three seperate causes of action. The first is for the recovery of possession of real property from which it is alleged that plaintiff, the owner, was unlawfully ousted by defendant. The second alleges that defendant wrongfully withholds possession, which was taken in pursuance of a contract of sale entered into between plaintiff and defendant, the obligations of which that are imposed on defendant she refused to perform and also declined to restore possession. In the third cause of action

it is alleged that plaintiff is the owner in fee of the lands in question to which defendant claims and asserts some adverse estate or interest which, as it is said, creates a cloud upon plaintiff's title, and she therefore demands that defendant be required to set forth the nature and character of her claim for judicial determination.

To the first cause of action there was a general denial. The second defense sets forth the chain of title in each of the parties to the action, from which it appears that the patentee of the lands, Lewis F. Crandell, soon after he obtained his title, borrowed of the Colorado Securities Company the sum of $1000, and to secure its payment executed a trust deed covering the premises to Henry J. Aldrich, president of the Securities Company, trustee. Following this is a statement of the provisions contained in the trust deed which define the duty and power of the trustee, and specify the contingencies and the manner in which foreclosure may be had. It is then charged that, in violation of the rights of the holder of the note who acquired it by transfer from the original, payee, and without a request from him so to do, and fraudulently and contrary to the terms of the trust deed itself, the trustee Aldrich caused a foreclosure of the trust deed and a sale of the property to be made, and the Securities Company bid it in at the foreclosure sale. Afterwards the company became insolvent, and a receiver of its assets was appointed, and upon his request, duly made to the court therefor, an order was entered authorizing the receiver to sell the premises, which thereafter he did to the plaintiff in this case, who at the time knew, or had knowledge of facts which diligently followed up would have furnished information, of the fraudulent foreclosure.

Defendant is the remote grantee of Lewis F. Crandell, and holds the title subject only to the lien of the trust deed which he gave to Aldrich as trustee to secure his $1000 note, and that, as such grantee, defendant is entitled to the possession of the prem-

Vol. 28–19

ises until a valid foreclosure divests her equity of redemption, and that has never been had. It also appears that each party claims title under a different tax deed. As a defense to the cause of action which alleges the wrongful detention of possession ob· tained by defendant as a vendee, the latter alleges that, as an inducement to her for making the contract with plaintiff for the purchase of the premises, she was led to believe by the plaintiff that the latter had good title thereto, upon the strength of which she made a partial payment of the purchase price, but afterwards ascertaining that the plaintiff had not a good title she refused to complete the contract. She denies that she ever entered into possession of the premises in pursuance of that agreement; but, on the contrary, alleges that, after learning of plaintiff's fraud, she purchased the equity of redemption from the grantee of the trustor, subject to the lien of the trust deed, and entered into possession, and retains the same, upon the strength of the title thus obtained.

There was a replication to the new matters of the answer, and upon the issues thus joined there was a trial before a jury which returned a verdict in favor of the plaintiff. The defendant, with· in the statutory time, filed a motion for a new trial for cause, which was overruled, and thereafter and within the time pre· scribed by section 272 of the civil code of 1887, which was then in force, defendant paid all the costs of the first trial, and sea· sonably made application for a new trial as of right, which motion was allowed. After the former judgment was vacated the place of trial was changed from the district court of Costilla county, where the first trial was had, to the district court of Conejos county, to which order granting the change the plaintiff excepted. Upon the second trial the findings and judgment were for defendant, and the plaintiff appealed.

Mr. CHAS. M. CORLETT for appellant.

Mr. IRA J. BLOQMFIELD for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

1. Apparently both parties concede that the respective tax deeds under which they hold are invalid, so that element of the controversy is eliminated from the present discussion.

2. It seems that the judge in vacation, of his own motion, ordered the cause transferred from the district court of Costilla to the district court of Conejos county. Whether this ruling was right is not material here, for the court had jurisdiction of the subject matter and when the cause was called for trial in the district court of Conejos county the plaintiff waived the objection by voluntarily appearing and consenting to proceed with the trial.

3. The point is made that the cause, or causes, of action set out in the complaint are legal causes of action, and that therein equitable defenses, such as this answer contains, are not permis-sible; and to this proposition we are cited to *Smith v. Pipe,* 3 Colo. 187, 195; *Wells v. Caywood,* 3 Colo. 487, 495; and *Stephens v. Clay,* 17 Colo., 489. The first two cases were decided under the modified common law practice prevailing in this jurisdiction before our code of civil procedure was adopted. The last case cited with approval the case of *Wells v. Caywood,* but not as to the point now under consideration. That an equitable defense may be interposed to a legal cause of action, including what under the old practice is denominated ejectment, is clear under section 59 of our code, and has been expressly declared in *Lewis v. Hamilton,* 26 Colo. 263.

4. The record shows that after the first judgment in favor of plaintiff was entered upon the verdict of the jury, a motion by defendant for a new trial for cause was filed, and the same was overruled, and the defendant prayed an appeal which was never perfected. Thereafter, and within the time prescribed by section 272 of the civil code, defendant paid all the costs of the first trial and seasonably made application for a new trial as of right under

the statute. The judgment was thereupon vacated by the court, and the cause placed upon the trial docket with permission to plaintiff thereafter to reopen the question as to the right of a new trial as of coruse, of which privilege plaintiff did not avail her-self. However, we shall dispose of the objection as though plaintiff were in a position to urge it.

It is said that, having first made a motion for a new trial for cause, which was overruled, defendant waived her right to a new trial as of course; and to this is cited *Johnson et al. v. Ballard,* 148 Ind. 181. In that case the record shows that an application for a new trial as of right was first made, and before the court ruled upon it a motion for a new trial for cause was filed and overruled. As a matter of fact, the record did not show that the trial court ever ruled upon the motion for a new trial as of right; and for that reason the supreme court held that an assignment of error based upon the supposed ruling presented no question for consideration, and the remark was added that by filing the motion for a new trial for cause *before* the court had ruled upon the pending motion for a new trial as of right, was a waiver by ap-pellants of the right to have the court pass upon the latter motion. It is plain that the facts are not similar to those in the case at bar and the case is not authority for plaintiff's contention. Our statute is imperative, and upon a compliance with its conditions a new trial as of right is the property of an unsuccessful party. Other decisions of the supreme court of Indiana are squarely in favor of the ruling below. *Railway Co. v. McBroom,* 103 Ind. 310; *Atkinson v. Williams,* 151 Ind. 431.

5. Plaintiff asserts, and defendant denies, that a vendee in possession of real property under a contract of sale with the ven-dor is estopped to deny the title of the vendor and to purchase an outstanding superior title. We do not find it necessary to determine whether the general rule applicable to the relation of landlord and tenant also applies to that of vendor and vendee; for in the answer defendant denies that she went into possession

of the premises under the contract of sale, but that after having discovered the fraud practised upon her by plaintiff she repudiated the contract and purchased the equity of redemption and entered upon the premises by virtue of the rights which the owner of the equity of redemption has. The evidence upon this question was conflicting and the controversy was resolved by the lower court in favor of defendant, which disposes of the present contention of plaintiff that defendant is estopped to deny plaintiff's title because she entered into possession under a contract of sale which she now disaffirms.

6. The principal controversy relates to the alleged fraudulent foreclosure and sale under the trust deed. Among its provisions is one, that in case of default in the payment of the note thereby secured, or any part thereof, then, upon the application of the legal holder of the note, it was lawful for the trustee to advertise and sell the same for the purpose of the payment of the indebtedness. The note secured was for $1000, affixed to which were ten semi-annual interest coupons in the sum of $40 each. Two of them were detached from the note and sent by Mr. Turbutt, the holder, to the Securities Company upon the representation that the same would be paid. The Securities Company did not pay them, and its president Aldrich must necessarily have known of that omission, as he was the managing officer of the company, as well as the trustee under the trust deed. Having thus obtained these coupons and claiming their ownership by the company, Aldrich, as trustee, without any request from Turbutt, the holder of the note and the real owner of the coupons, pretended to foreclose the same for the purpose of paying these two coupons, and the property was bid in by the Securities Company for $25 and title taken in its name.

Whether the owner and holder of any of these coupons was such a "holder of the note," secured by the trust deed, as that upon his request a valid foreclosure and sale thereunder could be made because of the failure to pay such interest, we need not

determine; for it is incontrovertible that neither Aldrich nor the Securities Company ever became the owner of either one of the interest coupons for the non payment of which the pretended foreclosure was had. He, or it, wrongfully converted these coupons to his or its own use in violation of the promise made to the holder of the note from which they were detached. Therefore, as between the holder of the note and the Securities Company and Aldrich, this pretended foreclosure and sale was voidable at the option of the former. He did not learn of the fraud practised upon him for some time thereafter, and repudiated it as soon as information concerning it reached him.

But it is said that plaintiff had no notice or knowledge of this fraud, and is an innocent purchaser for value. She got from the receiver of the Securities Company a quit-claim deed of the premises, and because of this fact alone defendant maintains that she was not a *bona fide* purchaser for value with notice of outstanding equities, and a number of cases are cited to this proposition. It is not important here what the rule is in this state, for entirely aside from this question, the evidence conclusively shows that plaintiff had knowledge, or was in possession of facts which, if diligently followed up, would have given her information concerning this fraud. Before she acquired title, negotiations were pending between her and the receiver for the purchase of this property, and in his letters the receiver distinctly informed her husband (who, under the facts of this case, is the agent and representative of plaintiff) that the trust deed still existed as a lien upon this property, and that the pretended sale of the trustee was a fraud. Nor is it important to determine whether plaintiff as a remote grantee of the purchaser at the sale is affected by the rule *caveat emptor,* for before she parted with her money and took title she was in possession of facts which, if they did not of themselves show the fraudulent character of the foreclosure, would, if followed up, have revealed to her the defects in the title which she was buying.

The plaintiff also says that, even if this be true, still defendant may not have the benefit of the defense which might be interposed by the holder of the note. But the record shows that the defendant is the purchaser of the equity of redemption from the original trustor, and under the terms of the trust deed the trustor and his grantees are entitled to the possession of the property until a valid foreclosure and sale of the equity of redemption occurs. Not only the holder of the note, but the owner of the equity of redemption, might obect to a fraudulent sale, and each is entitled to have the same made in accordance with the power which the trust deed conferred upon the trustee. It is too plain for argument that a mortgagor is injured when, in violation of his contract, his property is sold for default in the payment of less than one-tenth of the debt which it secures, with the balance of the debt left standing against him. We hold that defendant is in a position to assail the validity of the foreclosure sale.

Other reasons might be given for the affirmance of this judgment, but the foregoing are sufficient to sustain it. The judgment is affirmed.

*Affirmed.*

---

### On Petition for Rehearing.

*Per Curiam.*—Appellant in her petition for a rehearing questions the statement in the opinion that neither the Securities Company nor Aldrich, as trustee, ever became the owner of either of the interest coupons. Her counsel insists that the evidence shows that the Securities Company acquired them by purchase from the owner of the principle note.

Ownership is a question of law to be deduced from the facts,, and it was, and still is, our conclusion that, as between Turbutt, the owner of the note, and the Securities Company, the former was the equitable owner of the coupons, though the company had physical possession of them, which was wrongfully retained. We

are further of opinion that even if they belonged to the Securities Company, the attempted foreclosure and sale by Aldrich constituted a palpable fraud which conferred no title either upon the purchaser at the sale or its grantee, the appellant, both of whom took with notice of the unconscionable conduct of Aldrich.

The petition for rehearing should be denied.