CITY OF COLORADO SPRINGS, a Colorado municipal corporation and home rule city, for and on behalf of Colorado Springs Utilities, part of the City of Colorado Springs, Plaintiff

v.

The BOARD OF COMMISSIONERS OF the COUNTY OF PUEBLO, Defendant.

No. 06SA162.

Supreme Court of Colorado, En Banc.

Oct. 16, 2006.

As Modified on Denial of Rehearing Nov. 13, 2006.

Berenbaum, Weinshienk & Eason, P.C., David R. Eason, James L. Kurtz–Phelan, Denver, Colorado, Attorneys for Plaintiff.

Petros & White, LLC, Raymond L. Petros, Jr., Jennifer L. Soice, Denver, Colorado, Attorneys for Defendant the Board of Commissioners of the County of Pueblo.

Gary J. Raso, P.C., Gary J. Raso, Pueblo, Colorado, Attorney for the Honorable Dennis Maes and the Honorable Edward S. Colt.

Justice HOBBS delivered the Opinion of the Court.

Pursuant to C.A.R. 21, we exercised original jurisdiction to determine whether the El Paso County District Court and the Pueblo County District Court erred when they ruled that venue of this action is properly in the Pueblo County District Court.[1] We hold that

---

1. The petition for a rule to show cause stated the following issues:

1. Did the Respondent Courts err in failing to find that the Action is one "affecting utilities"

the trial courts correctly determined that venue for this lawsuit is in the Pueblo County District Court pursuant to C.R.C.P. 98(b)(2), and we discharge the rule.

## I.

In 1990 the City of Colorado Springs ("City"), located in El Paso County, began a regional water delivery project, the Southern Delivery System ("SDS"), designed to increase its water supply and storage. The SDS plans required facilities that cross through a small portion of Pueblo County and a larger portion of El Paso County.[2]

The Board of Commissioners of Pueblo County ("Pueblo County Board") adopted a resolution in 2005 that changed its existing land use regulations regarding the permitting and designation of municipal and industrial water projects.[3]

Based on the Pueblo County Board's decision to change its regulations, the City filed a complaint in the district court for El Paso County seeking a declaration that the new regulations were "ineffective, invalid and/or unenforceable" with respect to the SDS project. The Pueblo County Board moved to transfer venue to the Pueblo County District Court under C.R.C.P. 98(b)(2). After briefing, the El Paso County District Court entered an order transferring venue to the Pueblo County District Court. Subsequently, the City requested that the district court in Pueblo County vacate the order and transfer the action back to the district court in El Paso County. The Pueblo court denied the City's motion.

The City then filed a petition for an original proceeding in this court, requesting that we order transfer of this case back to the district court in El Paso County.

## II.

We hold that the trial courts correctly determined that venue for this lawsuit is in the Pueblo County District Court pursuant to C.R.C.P. 98(b)(2).

### A.

### Standard of Review

 Under C.A.R. 21(a), we may exercise original jurisdiction to review whether a trial court acts in excess of its jurisdiction or without jurisdiction. *See Spencer v. Sytsma*, 67 P.3d 1 (Colo.2003); *Millet v. Dist. Court*, 951 P.2d 476 (Colo.1998). Issues involving venue directly affect the trial court's jurisdiction and authority to proceed with a case. *Millet*, 951 P.2d at 477. When reviewing a trial court's venue determination, we are concerned with avoiding "the delay and expense involved in a re-trial of the case if the change of venue was improperly denied." *Bd. of County Comm'rs v. Dist. Court*, 632 P.2d 1017, 1020 (Colo.1981) [hereinafter *Eagle I* ] (citing *Jameson v. Dist. Court*, 115 Colo. 298, 172 P.2d 449 (1946)).

### B.

### The Areas and Activities of State Interest Act

The General Assembly in 1974 adopted the

---

within the meaning of C.R.C.P. 98(a), such that venue is mandatory in El Paso County?

2. Did the Respondent Courts err in concluding that C.R.C.P. 98(b)(2) applies to the action, like the one below, which presents an unalloyed claim for declaratory relief concerning the validity of a local government's regulations?
 a. If not, did the Respondent Courts nonetheless err in failing to find that the City's claim arose, at least in part, in El Paso County because the Board's Regulations are designed and intended to govern activities occurring or planned to occur in that County?
 b. If not, did the Respondent Courts nonetheless err in failing to find that the Board had waived or was estopped to claim Pueblo County as the exclusive venue for the Action?

3. Assuming that Rules 98(a) and 98(b)(2) apply equally and posit inconsistent venues for the Action, did the Respondent Courts err in failing to conclude that the City, as the Plaintiff, was entitled to its choice?

2. According to the City, of the 5,135 acres of land planned for the SDS project, ninety-five percent of the total use is located in El Paso County, while five percent is located in Pueblo County.

3. The Pueblo County Board extensively revised its land use designations pursuant to section 24–65.1–104 to –05, C.R.S. (2006).

Areas and Activities of State Interest Act [4] ("the Act"), known as H.B. 1041 and currently codified at section 24–65.1–101, *et seq.*, C.R.S. (2006), for the purpose of protecting the utility, value, and future of all lands within the state as a matter of public interest, section 24–65.1–101(1)(a). The Act provides, in part, that the General Assembly "shall describe areas which may be of state interest and activities which may be of state interest and establish criteria for the administration of such areas and activities." § 24–65.1–101(2)(a).

■ In addition, the Act delegates authority to local governments to designate and administer areas and activities of state interest. § 24–65.1–101(2)(b); *City & County of Denver v. Bd. of County Comm'rs*, 782 P.2d 753 (Colo.1989) [hereinafter *Eagle II* ]. "The Act thus allows both state and local governments to supervise land use which may have an impact on the people of Colorado beyond the immediate scope of the land use project." *Eagle II*, 782 P.2d at 755.

Site selection and construction of major facilities involving public utilities and the efficient utilization of both municipal and industrial water projects may be designated by a local government as activities of state interest. § 24–65.1–203(1)(f),(h). Once an activity is designated as one of state interest, the Act establishes guidelines for local government administration of the activity. §§ 24–65.1–401 to 404, C.R.S. (2006). The Act requires that "[a]ny person desiring to engage in the development in an area of state interest ... shall file an application for a permit with the local government in which such development is to take place." § 24–65.1–501(1)(a). A local government may deny the permit if the proposed activity does not comply with the locally adopted guidelines and regulations. § 24–65.1–501(4).

In *Eagle II*, we upheld the constitutionality of the Act's provisions allowing local governments to determine which activities are of state interest and then to regulate those activities. 782 P.2d at 758. In addition, we

concluded that, because the Act requires local governments to comply with its provisions when adopting regulations and establishing permit application procedures, the Act does not unconstitutionally delegate legislative authority to local governments. *Id.* at 759–61.

The court of appeals has addressed the scope of permissible local regulations under the Act. *City of Colo. Springs v. Bd. of County Comm'rs*, 895 P.2d 1105, 1113 (Colo. App.1994) (cert. denied, 516 U.S. 1008, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995)). Given the fundamental objective of the Act to allow local governments to regulate designated matters of state interest, the court concluded that a county may "regulate construction of water diversion projects located within the county but which transport water to end users outside the county." *Id.*

■ Here, the Pueblo County Board revised its local regulations, pursuant to the Act, addressing site selection and construction of major new domestic water projects. The revisions designated the "efficient utilization of municipal and industrial water projects" as a matter of state and local interest. Pueblo County, Land Code, ch. 17.164.010, 17.172.010 (Sept.2005). The regulations prohibit the "development, including construction, expansion, reoperation [sic], or other significant change of use, of a municipal and/or industrial water project wholly or partially within unincorporated Pueblo County, without first obtaining a permit...." *Id.* at ch. 17.172.010. The revised regulations also set forth detailed criteria for obtaining a permit.

The City's complaint in this case requests a declaration that the Pueblo County Board's regulations are invalid because the provisions were designed to impact the SDS project, which is located primarily in El Paso County, and the regulations attempted to extend the Board's regulatory power beyond its territorial jurisdiction.[5] To determine if the trial courts erroneously transferred venue to Pueblo County, we analyze the applicability of C.R.C.P. 98(b)(2) and 98(a) to this case.

---

4. *See* 1974 Colo. Sess. Laws 80, 335–52, as amended by 2005 Colo. Sess. Laws 192, 667–68.

5. We restrict our holding in this case to the venue issue and make no ruling or comment on the merits.

## C.

### Venue

### 1. C.R.C.P. 98(b)(2)

Under C.R.C.P. 98(b)(2), [6] venue is proper "in the county where the claim, or some part thereof, arose," when the action involves a public officer's failure to perform his or her duties as required by law. Accordingly, venue is proper in the county where the officers performed the action. *Executive Dir., Colo. Dep't of Corr. v. Dist. Court*, 923 P.2d 885, 886–87 (Colo.1996); *7 Utes Corp. v. Dist. Court*, 702 P.2d 262, 266 (Colo.1985); *Eagle I*, 632 P.2d at 1021.

In *Eagle I*, we held that C.R.C.P. 98(b)(2) controls venue when a plaintiff sues a board of county commissioners in its official capacity for the adoption of H.B. 1041 land use regulations to control the use of water rights and facilities located in the adopting county, even though the regulations at issue may also impact water rights and facilities outside that county. 632 P.2d at 1020–21. We rejected the applicability of C.R.C.P. 98(a), in favor of C.R.C.P. 98(b)(2), when county commissioners are sued for an official act. "Claims for injunctive relief against public officers arise, within the meaning of C.R.C.P. 98(b), in the county in which the public body has its official residence and from which any action by the board pursuant to the injunction must emanate." *Id.* at 1021.

Here, the City contends that C.R.C.P. 98(b)(2) does not apply because it is not seeking affirmative relief against the Pueblo County Board, only declaratory relief. Nevertheless, its complaint seeks to void the Pueblo County Board's regulations as being beyond and in excess of its "authority, discretion and jurisdiction." The complaint recites that the land use regulations are "ineffective, invalid and/or unenforceable." Although the City does not request an injunction, monetary damages, or punitive sanctions, the substance of the City's complaint is directed at the official actions of the Pueblo County Board, and the primary purpose of the lawsuit is to determine the validity of those actions as they apply to the City's SDS project. Essentially, the substance of the City's complaint requests injunctive relief against the Pueblo County Board. Because the issue here is the validity and enforceability of land use regulations adopted by the Pueblo County Board, venue is proper where the challenged official actions occurred, Pueblo County.

Alternatively, the City asserts that, if C.R.C.P. 98(b)(2) does apply, venue would still be proper in El Paso County because at least "some part" of its claim arose there. We disagree. Venue is proper under C.R.C.P. 98(b)(2) where the actions of the governing board giving rise to the dispute took place. Regardless of the potential impact outside the county, a claim involving the validity and effectiveness of regulations passed by a governing board must be heard in the county where the board acted to pass those regulations. *Executive Dir., Colo. Dep't of Corr.*, 923 P.2d at 886–87 ("[I]t is the decisional act of the public officer ... that gives rise to the cause of action and establishes venue of an action against such officer.") (citations omitted).

We now analyze whether C.R.C.P. 98(a) also applies and requires a transfer of venue back to El Paso County.

### 2. C.R.C.P. 98(a)

Venue is proper under C.R.C.P. 98(a) [7] if the subject of the claim affects "real property, franchises, or utilities," and the claim should be "tried in the county in which the subject of the action, or a substantial part thereof, is situated." To determine if venue is proper under C.R.C.P. 98(a), the substance of the action, rather than its form, controls.

---

6. C.R.C.P. 98(b)(2) provides, in pertinent part, that "(b) Actions upon the following claims shall be tried in the county where the claim, or some part thereof, arose ... (2) Against a public officer or person specially appointed to execute his duties, for an act done by him in virtue of his office, or against a person who by his command, or in his aid, does anything touching the duties of such officer, or for a failure to perform any act or duty which he is by law required to perform."

7. C.R.C.P. 98(a) provides that, "All actions affecting real property, franchises, or utilities shall be tried in the county in which the subject of the action, or a substantial part thereof, is situated."

Colo. Nat'l Bank v. Dist. Court, 189 Colo. 522, 524–25, 542 P.2d 853, 855–56 (1975). In the context of C.R.C.P. 98(a), the term "affected" means that the subject of the claim must relate to the "title, lien, injury, quality, or possession" of the property, franchises, or utilities. Craft v. Stumpf, 115 Colo. 181, 182, 170 P.2d 779, 780 (1946).

However, as we implicitly held in Eagle I and make explicit here, when the requested relief is directed to the validity and operative effect of H.B. 1041 county land use regulations, there is no issue as to the title, lien, injury, quality or possession of the property, franchises, or utilities within the meaning of C.R.C.P. 98(a). Eagle I, 632 P.2d at 1021.

The Pueblo County Board passed the amended regulations in its official capacity, and the regulations address facilities planned to be located in Pueblo County and impacts that may occur there. That the City's planning for project features and water delivery in El Paso County may ultimately be impacted by such regulation, does not mandate venue in the El Paso County District Court.

Alternatively, the City asserts that C.R.C.P. 98(a) and 98(b)(2) apply equally; thus, the City may choose the venue. Ordinarily, the party filing the lawsuit may select the venue when there is more than one proper location. 7 Utes Corp., 702 P.2d at 266; Welborn v. Bucci, 95 Colo. 478, 37 P.2d 399 (1934); Smith v. Huber, 666 P.2d 1122, 1124 (Colo.App.1983). However, in this case, we reject the City's argument that venue is proper under both C.R.C.P. 98(a) and 98(b)(2).

The controlling venue issue turns on the residence of the governmental body that adopted the challenged land use regulations. Although the City contends that its action "affects utilities" and that C.R.C.P. 98(a) mandates and/or allows venue in El Paso County, the substance of its complaint addresses the validity and enforceability of the Pueblo County Board's adoption of the challenged H.B. 1041 land use regulation. Thus, venue is proper only in the Pueblo County District Court pursuant to C.R.C.P. 98(b)(2).[8]

8. Given the nature of this lawsuit and the requirements of C.R.C.P. 98(b)(2), we do not find the City's waiver and estoppel arguments suffi-

## III.

Accordingly, we determine that the venue of this lawsuit must remain with the Pueblo County District Court. The trial courts did not err, and we discharge the rule.

cient to justify the transfer of venue back to the El Paso County District Court.